## A04A1351. FROST v. THE STATE.

(603 SE2d 481)

BLACKBURN, Presiding Judge.

Following a jury trial, James Randall Frost appeals his conviction on one count of theft by taking, contending that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in failing to grant his general demurrer to the indictment; and (3) there was a fatal variance between the method of committing theft by taking alleged in the indictment and the method proved at trial. For the reasons which follow, we affirm.

1. In his first enumeration of error, Frost contends that the evidence was insufficient to support his conviction. We disagree.

Regarding sufficiency of the evidence, the standard of review is clear: On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard

---

of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

(Punctuation omitted.) *Kelly v. State*.[2]

Viewed in this light, the evidence shows that Sam McGee and Frost entered into a business agreement to form a company called All Points Erosion Control ("APEC"). Under the agreement, McGee would supply the capital, approximately $250,000, for the purchase of the necessary equipment, and Frost, who had extensive experience in erosion control, would be responsible for the day-to-day operation of the business.

After McGee became upset with Frost because of a fine imposed on the company by the county, McGee told Frost he wanted out of the business and offered Frost the opportunity to buy the business. Though the two did not arrive at specific terms for sale of the business, they did agree that APEC would cease to exist on December 31, 2001, and that Frost would form a new company, All Points Erosion Control, Inc. ("APEC, Inc."), which would continue the business as of January 1, 2002. McGee and Frost also agreed, and sent out letters to existing customers to this effect, that payments for work done prior to December 31, 2001, were to go to McGee at APEC's Gainesville, Georgia address, and payments for work done after December 31, 2001, were to go to Frost, as sole owner of APEC, Inc., at APEC, Inc.'s Clermont, Georgia address.

Testimony at trial showed that when checks for work done after December 31, 2001, were sent to APEC, these checks were returned to the customers so that payment could be made to APEC, Inc. There was also evidence that checks for work done before December 31, 2001, were sent to APEC, Inc. rather than APEC. While some of these misdirected checks were returned, one of those checks, the theft by taking of which Frost was convicted, was not. The controller of Bowen & Watson, Inc., the customer that issued the check, testified that he received an invoice dated December 31, 2001, for work done by APEC prior to December 31, and that a check for $724 was written to APEC on January 21, 2002. However, the check, made out to APEC at its Gainesville office, as is indicated on the copy of the check submitted

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Kelly v. State*, 255 Ga. App. 813 (1) (567 SE2d 36) (2002).

as State's Exhibit 2, was deposited to account number 0240069 on January 22, 2002. An employee with the bookkeeping department of the Gainesville Bank & Trust identified another check and a deposit ticket, State's Exhibits 7 and 8, used to deposit the check in APEC, Inc.'s account, and stated that APEC, Inc.'s account number was 0240069.

Robin Kemp, a criminal investigator with the Gainesville Police Department, met with Frost after McGee complained that Frost had retained checks owed to APEC. Frost admitted that he had received payments which might belong to McGee, but stated that the $724 check from Bowen & Watson was for work done after December 31, 2001, and belonged to him. He came to an agreement with Kemp to pay back the money owed to McGee by March 15, 2002, but the money was never paid, and a warrant was issued for his arrest. On the stand, Frost admitted that he had agreed to pay money back to McGee, but said that he did not do so because McGee had filed a civil suit against him for approximately $180,000.

Under OCGA § 16-8-2, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Proof that the check, written to APEC for work done prior to December 31, 2001, was deposited into the APEC, Inc. account was sufficient to support the jury's determination that Frost committed theft by taking. *Jordan v. State*.[3] This determination was further supported by testimony that Frost acknowledged that he had checks in his possession belonging to McGee, and that he was not going to pay McGee back for any checks he had received because McGee had instituted a civil suit against him.

Frost contends that there is no evidence that he received, cashed, or deposited the check. Theft by taking can be established by circumstantial evidence. *Duke v. State*.[4] The jury was authorized to infer from the fact that the check was deposited into his account that Frost himself received or deposited the check into his account. Accordingly, the evidence was sufficient to enable a rational trier of fact to find Frost guilty beyond a reasonable doubt of the crime of theft by taking.

2. Frost next argues that his general demurrer to the indictment should have been granted because the indictment did not allege the crime of theft by taking; in making this argument, he finds significant the fact that the indictment alleged that he unlawfully received a

---

[3] *Jordan v. State*, 242 Ga. App. 547, 549 (1) (b) (528 SE2d 858) (2000).
[4] *Duke v. State*, 153 Ga. App. 204, 205 (264 SE2d 721) (1980).

check instead of charging him with unlawfully taking the check. We find no significance in the fact that he was charged with unlawfully accepting the check and no merit to this argument.

"In testing the sufficiency of an indictment, it must be borne in mind that the indictment need not quote literally the exact language of the statute which the defendant allegedly violated." *Bostic v. State.*[5]

> The purpose of the indictment is to allow the defendant to intelligently prepare his defense and protect him from double jeopardy. A post-conviction review of an allegation of a defective indictment is one of harmless error. A defendant who was not misled to his prejudice by any alleged imperfection cannot obtain a reversal of his conviction on this ground. Because [Frost shows] no harm from the alleged defect, there was no error.

(Citations omitted.) *Bullard v. State.*[6] See also *Bostic*, supra at 495 ("[w]e think the indictment sub judice alleged an offense which was easily understood by the jury and enabled the defendant to plead a former acquittal or conviction. . . . The trial court did not err in overruling defendant's [demurrer].").

3. Frost next contends that his conviction should be reversed because there was a fatal variance between the method of committing theft by taking alleged in the indictment and the method of committing theft by taking proved at trial; he points out that the indictment alleged a theft by "unlawful taking," while the proof at trial, he claims, related to theft by "unlawful appropriation." We find no error.

OCGA § 16-8-2 defines two alternative means of committing the crime of theft by taking; one "commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property." Frost's argument that theft by unlawful appropriation was the only crime proved at trial is apparently grounded in the view that he lawfully received the check in the mail and then, after such lawful receipt, decided to appropriate the check unlawfully. This argument imposes too narrow a reading on the concept of "taking" in the statute.

Under OCGA § 16-8-2, "the gravamen of the offense is the taking of the property of another against the will of such other, regardless of whether the property is taken or appropriated and the manner of the taking or the appropriation." (Citation and punctuation omitted.)

---

[5] *Bostic v. State*, 173 Ga. App. 494 (1) (326 SE2d 849) (1985).
[6] *Bullard v. State*, 242 Ga. App. 843, 849 (9) (530 SE2d 265) (2000).

*Clark v. State.*[7] "Under the statute, the phrase 'regardless of the manner in which the property is taken' is a catch-all phrase rendering our theft by taking statute broad enough to encompass any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property." (Punctuation omitted.) *Travis v. State.*[8] Thus, it is clear that the jury, as well as the trial court, saw Frost's deposit of the check belonging to APEC as an unlawful taking, rather than appropriation, of McGee's property. The broadness of the statute authorizes the view that Frost's deposit of McGee's check into his own account constituted the taking of his property. *Mullen v. State*[9] (holding that theft by taking conviction was supported by evidence of unlawful taking rather than unlawful appropriation of funds where defendant, who was given an electronic banking card encoded with the account number of another customer, withdrew funds from bank account knowing that she was obtaining funds which did not belong to her and which she had no right to receive).

More importantly, there was no variance at all between the allegation in the indictment and the proof at trial. The indictment charged Frost with the first method of theft by taking, i.e., an unlawful taking of the check. In keeping with the allegation in the indictment, the trial court, in its charge, authorized a finding of guilty if the jury found a theft by taking only by this first method, i.e., again, an unlawful taking. The trial court did not charge the jury that theft by taking could consist of the unlawful appropriation of property lawfully obtained. Therefore, since both the indictment and the trial court charged theft by taking by the same method, and Frost could not have been convicted of a crime not charged, there was no possibility of a fatal variance between the crime alleged in the indictment and the crime proved at trial. See also *Mullen*, supra ("the court did not charge the jury that theft by taking could consist of the unlawful appropriation of property lawfully obtained, and thus there is no possibility that the jury based its verdict on that theory rather than the theory alleged in the indictment"). Cf. *Robinson v. State*[10] (holding that since the court in its charge authorized guilty finding if jury found theft by either method of accomplishment and indictment charged defendant only with first method of taking, the court was unable to foreclose the possibility of a fatal variance because the jury could have convicted the appellant of a crime not charged).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[7] *Clark v. State*, 138 Ga. App. 266, 269 (4) (226 SE2d 89) (1976).

[8] *Travis v. State*, 243 Ga. App. 77, 78 (2) (532 SE2d 430) (2000).

[9] *Mullen v. State*, 203 Ga. App. 170, 172 (2) (416 SE2d 784) (1992).

[10] *Robinson v. State*, 152 Ga. App. 296 (262 SE2d 577) (1979).

DECIDED AUGUST 10, 2004.

*Whitmer & Law, George H. Law III*, for appellant.
*Jason J. Deal, District Attorney, Melissa J. Sanford, Assistant District Attorney*, for appellee.