## A09A1911. BROWN v. THE STATE.
(692 SE2d 9)

MILLER, Chief Judge.

A jury convicted Jacqueline Hill Brown of a single count of theft by taking (OCGA § 16-8-2). Brown appeals, contending that the

trial court erred in (i) denying her motion for directed verdict of acquittal; (ii) overruling her oral demurrer based on a fatal variance; (iii) instructing the jury as to the offense of theft by taking and refusing to give her requested charge on currency; and (iv) denying her motion to disqualify the trial judge. Concluding that there was no fatal variance and that the State's evidence was sufficient to sustain Brown's conviction beyond a reasonable doubt, we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation omitted.) *Osborne v. State*, 291 Ga. App. 711 (1) (662 SE2d 792) (2008).

Viewed in that light, the evidence shows that in February 2000, Brown was employed with the Federal Highway Administration ("FHA") as an information analyst and her position relied heavily on the use of statistics. Gary Corino was the resource manager for the Atlanta division of the FHA and supervised Brown and Vanessa Smith, a financial and administration team leader. In June 2004, Brown applied for a company academic study program ("ASP") to attend job-related college courses and asked for a letter of recommendation from Corino, which he provided. Although Corino recommended Brown for a statistics course, he later learned that Brown had applied for courses in biostatistics, which were unrelated to the business of the FHA. In early 2005, Corino learned that Brown had used approximately $7,000 in government funds from Brown's operating budget to pay for coursework in linear algebra, statistics, and data management. Due to a misunderstanding about the use of government funds from Brown's operating budget for ASP, Brown was allowed to complete the courses and was not required to reimburse the FHA for such coursework.

Thereafter, on March 18, 2005, Corino notified all employees supervised by him, including Brown, that his approval was required for any expenditure of government funds for ASP. On May 26, 2005, after consultation with, and consensus from, other resource center managers, Corino implemented a new standard operating procedure governing employees' participation in ASPs, and notified all employees, including Brown. Although she never sought nor received Corino's approval for such courses, Brown utilized three purchase orders "for supplies or services" after March 18, 2005 for payment of her college courses. Typically, the purchase request preceded the purchase order, but on two occasions, Brown initialed the purchase order prior to submitting the purchase request. For example, although nominally a purchase request for supplies and services in the amount of $3,395, a March 25, 2005 purchase order authorized payment for courses in basic behavioral science in public health, introduction to United States healthcare system training, and man-

datory activity fees, and listed Smith and Brown as the authorized signatories. A second such order, dated August 1, 2005, authorized a requisition for a course entitled "Seminar in Biostatistics" and an activity fee at Emory University in the amount of $935 but purported to be a request for supplies and services. Brown initialed the purchase request pertaining to this order. The third purchase order for supplies and services, dated September 9, 2005, authorized payment in the amount of $7,296 for courses in geographic information systems, biostatistics, biostatistical consulting, epidemiologic methods, and mandatory activity fees at Emory for Brown.

1. Brown contends the trial court erred in denying her motion for directed verdict of acquittal because the evidence was insufficient to support her conviction. We disagree.

"The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." *Hurst v. State*, 258 Ga. App. 664, 665 (2) (574 SE2d 876) (2002). We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The gravamen of the offense of theft by taking as alleged in the indictment is the "taking of the property of another against the will of such other, regardless of whether the property is taken or appropriated and the manner of the taking or the appropriation." (Citation, punctuation and footnote omitted.) *Frost v. State*, 269 Ga. App. 54, 57 (3) (603 SE2d 481) (2004). "[T]he evidence must show that the requisite intent to deprive the owner of the property was present at the time of the taking. . . ." (Citations omitted.) *Spray v. State*, 223 Ga. App. 154, 156 (1) (476 SE2d 878) (1996).

Here, the jury was authorized to infer from the evidence that without Corino's approval, Brown falsified three purchase orders authorizing payment of FHA funds for college courses under the pretense that the orders were for supplies and services. On two occasions, the purchase orders were signed before the purchase requests. And the fact that Brown knew that Corino's approval was required in order to enroll in college courses after March 18, 2005 was additional evidence from which the jury could conclude that Brown had the requisite intent to deprive FHA of the monies when she initialed the purchase orders for college courses in April, August and September 2005. *Spray*, supra, 223 Ga. App. at 156 (1). Further, the FHA was permanently deprived of the monies it paid Emory for Brown's courses. Accordingly, since the evidence was sufficient for any rational trier of fact to find Brown guilty beyond a reasonable doubt of the crime of theft by taking, the trial court properly denied

Brown's motion for directed verdict. See *Hurst*, supra, 258 Ga. App. at 665 (2).

2. Brown argues that the trial court erred in failing to grant her motion for directed verdict based on a fatal variance between the indictment and the evidence at trial because the evidence failed to prove that she unlawfully took United States currency in excess of $500 as alleged. We disagree.

We review the sufficiency of an indictment to determine whether a defendant was "misled to his prejudice." (Citation and punctuation omitted.) *Parks v. State*, 294 Ga. App. 646, 649 (4) (669 SE2d 684) (2008).

"A variance between the allegata and probata is not fatal unless it misinforms the accused of the charges against him or leaves him subject to subsequent prosecutions for the same offense." (Citations and punctuation omitted.) *Parks*, supra, 294 Ga. App. at 651 (5). "The true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." (Citation and punctuation omitted.) *State v. Forthe*, 237 Ga. App. 134, 136-137 (b) (514 SE2d 890) (1999).

Here, the indictment placed Brown on notice that she was accused of theft of monies belonging to FHA in excess of $500. At trial, the evidence showed that Brown used FHA funds without her supervisor's permission by manipulating the use of purchase orders to pay for her college courses. The inclusion of the word "currency" in the indictment was not an essential element of the offense and did not create a fatal variance between the allegata and the probata since a purchase order authorizing the expenditures of funds, like currency, is a method of payment. See *Mitchell v. State*, 218 Ga. App. 330, 331-332 (461 SE2d 292) (1995) (although indictment charged aggravated assault with use of a knife and evidence at trial showed that a piece of glass was used, no fatal variance existed because both items produce similar injuries). Further, Brown's theory of defense was her lack of criminal intent to commit the offense of theft by taking, rather than the indictment's failure to apprise her of the charges against her. As such, we conclude that any variance between the indictment and the evidence at trial "was not sufficient to mislead or surprise [Brown] . . . [;] nor did it subject [her] to the risk of being prosecuted again for the same offense." See *Nash v. State*, 222 Ga. App. 766-767 (1) (476 SE2d 69) (1996).

3. Brown contends that the trial court's charge on the offense of theft by taking was erroneous because (i) the trial court charged the jury on the commission of the offense by two methods when the indictment alleged the commission of the offense by one specific

method and failed to give an appropriate limiting instruction and (ii) the charge failed to include her requested instruction on currency. We disagree.

(a) *Jury charge on theft by taking.* The trial court charged the jury as follows:

> A person commits theft by taking when that person unlawfully takes any property of another with the intention of depriving the other person of the property regardless of the manner in which the property is taken or appropriated.
>
> Property of another includes property in which any person other than the defendant has an interest.
>
> To deprive means to, without justification, withhold the property of another permanently or dispose of the property so as to make it unlikely that the owner will recover it.
>
> Owner means a person or entity, which includes the Federal Highway Administration, who has a right to possession of property which is superior to that of a person who takes, uses, obtains or withholds it from that person or entity in which the person taking, using, obtaining, or withholding is not privileged to infringe.

Here, the indictment charged Brown with the unlawful taking of United States currency of a value in excess of $500 with the intention of depriving the FHA of said property, and the foregoing jury instruction corresponded to the manner of theft alleged therein. The trial court did not charge the jury that theft by taking could be committed by the unlawful appropriation of property lawfully obtained. See *Bell v. State*, 220 Ga. App. 293, 294 (1) (469 SE2d 714) (1996) (jury charge on theft by taking did not indicate that theft "could consist of the unlawful appropriation of property lawfully obtained, and thus there is no possibility that the jury based its verdict on that theory rather than the theory alleged in the indictment") (punctuation omitted); compare *Walker v. State*, 146 Ga. App. 237, 243 (2) (246 SE2d 206) (1978) (defendant indicted for committing theft by "wrongfully taking" property, but the trial judge defined the offense of theft by taking as one which could be committed by either of two alternative methods, not simply by the method alleged in the indictment). To the extent that the jury may have been confused by the phrase "regardless of the manner in which the property is taken or *appropriated*" in the first sentence of the charge, as above, the trial court cured any error by specifically limiting the jury's consideration of the evidence to "theft by taking U. S. currency of a value in excess of $500 as charged in the

indictment[.]" Further, the trial court instructed the jury that "the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged . . . beyond a reasonable doubt." Thus, the trial court's charge, "when considered in its entirety, fairly instructed the jurors that they could convict [Brown] only of the offense with which [she] was charged in the indictment." *Lumpkin v. State*, 249 Ga. 834, 836 (2) (295 SE2d 86) (1982) (although the trial court recited the statutory offense of theft by taking stolen property in its jury charge, it also gave a remedial instruction, which "limited [the jury's] consideration to the specific method of committing the offense, 'disposing of' stolen property, which was charged in the indictment"); *Green v. State*, 240 Ga. App. 377, 380 (4) (523 SE2d 581) (1999) (trial judge provided a remedial instruction to the jury "that the burden of proof is upon the State to prove every material allegation in the indictment"). As such, the trial court's charge on theft by taking was not erroneous.

(b) *Brown's requested charge on currency.* In light of our holding in Division 2, we need not address the trial court's refusal to instruct the jury on the definition of United States currency.

4. Brown argues for the first time on appeal that the trial judge erred in denying her motion to disqualify him because he failed to disclose his employment as an adjunct professor at Emory University. We are not persuaded.

Uniform Superior Court Rule 25.1 places an affirmative duty on a party to file a written motion to recuse supported by accompanying affidavits setting forth the facts therein. Given Brown's failure to file a written motion to disqualify, there is nothing presented for appellate review. See *Phillips v. State*, 267 Ga. App. 733, 736 (2) (601 SE2d 147) (2004) (untimely filed written motion to recuse waives the grounds for recusal).

Based on the foregoing, we affirm the trial court's denial of Brown's motion for a new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 16, 2010 —
RECONSIDERATION DENIED MARCH 8, 2010 — ■

*Charles L. Webb*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Lenny I. Krick*, Assistant District Attorney, for appellee.