**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 21, 2017**

# In the Court of Appeals of Georgia

A17A1017. GREEN v. THE STATE.

ELLINGTON, Presiding Judge.

Following a bench trial in the Superior Court of Wheeler County, the court found Casey Green guilty of four counts of theft by taking, OCGA § 16-8-2.[1] Green appeals following the trial court's denial of his motion for new trial. He contends that the evidence was insufficient to support his conviction. We affirm for the reasons set forth below.

On appeal of a criminal conviction on grounds of insufficiency of the evidence, the appellate court's duty is to determine "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

---

[1] Green was indicted with committing five counts of theft by taking. The court found Green guilty of Counts 1, 2, 4, and 5, and not guilty of Count 3.

essential elements of the crime beyond a reasonable doubt." (Punctuation and footnote omitted.) *Thompson v. State*, 277 Ga. 102, 103 (1) (586 SE2d 231) (2003).[2]

So viewed, the evidence shows that Green and Henry Clark had a long standing business relationship. Clark, through his company, T.C. Logging, Inc., was in the business of purchasing and reselling timber. Green was a "forester" who contracted with landowners for the purchase of timber and oversaw harvesting operations. In the course of his business, Green did not sell timber directly to the mills. Rather, Green would take timber to the mill under Clark's "ticket," the mill would pay Clark for the timber, and Clark would cut checks to pay the loggers and the landowners. Green would then, according to Clark, "deliver the checks back where they were supposed to be." After the expenses were paid, Green and Clark would share the remainder.

During July and August of 2012, Clark made four checks payable to Rick Compton under the name "RC Timber," and he gave those checks to Green with direction that he deliver them to Compton.[3] According to Clark, Compton had been

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The checks were payable to the order of RC Timber and drawn on TC Logging's account at Wheeler County State Bank in the amounts of $7741.04, $7129.97, $3538.15, and $12,902.59, respectively.

2

acting as a "consultant" for a landowner, and Compton was supposed to pay the landowner out of the proceeds of the checks.[4] Rather than deliver the checks to Compton, Green endorsed the checks in his own name and deposited them in his account at Wheeler County State Bank. The Bank's teller, who was familiar with both Green and Clark, was initially concerned about processing the deposits, but she did so after Green, either directly or in response to her inquiry, represented to her that his initials had been mistakenly transposed.[5]

Clark realized that there was an issue with the checks when he received word that the landowner had not been paid. After meeting with Compton, Clark called the Bank and asked for copies of the backs of the checks so he could see the endorsements. Clark then made direct payments to the landowner and Compton. An officer of the Bank met with Green in an effort to determine what had happened, but Green offered no explanation for the deposits.[6] Clark testified that he contacted Green

---

[4] Clark testified that a portion of the proceeds were to be retained by Compton, and "the rest to the landowner."

[5] The teller testified that Green's initials are "CR Green[] and I think the checks were RC. [Green] is CRG Timber[.]"

[6] The Bank ultimately reimbursed Clark in the amount of $31,311.75 on account of "bank error."

3

and invited him to his office to "work this out," but Green never came, nor did he explain to Clark where the money had gone.

1. Green testified in his defense that he and Compton were working as "partners" and that Compton had asked Green to deposit the checks payable to Compton's business in Green's account. As Compton did not testify, Green contends that there is no evidence to dispute his testimony and that the State therefore failed to prove beyond a reasonable doubt that he unlawfully appropriated the checks.

OCGA § 16-8-2 provides in pertinent part that: "[a] person commits the offense of theft by taking when he . . . being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." The offense's gravamen "is the taking of the property of another against the will of such other, regardless of whether the property is taken or appropriated and the manner of the taking or the appropriation." (Citation and punctuation omitted.) *Brown v. State*, 302 Ga. App. 641, 643 (1) (692 SE2d 9) (2010).

For purposes of our review of the sufficiency of the evidence, "as long as there is some evidence, even though contradicted, to support each fact necessary for the state's case, the verdict will be upheld." (Citation and punctuation omitted.) *Wiggins*

4

*v. State*, 334 Ga. App. 54, 57 (3) (778 SE2d 60) (2015). And "[i]t is axiomatic that[,] in a bench trial, the trial court weighs the evidence and determines the credibility of witnesses." (Citation and punctuation omitted.) *Kelly v. State*, 270 Ga. App. 380, 381 (606 SE2d 586) (2004). Here, the trial court found that, upon considering the witnesses' credibility, motive, and opportunity, as well as Green's manner and disposition, Green's factual account was not persuasive.

Clark testified that Green was working with him and represented Clark's business, T.C. Logging. Green also worked with a number of consultants, such as Compton, with different consultants representing different landowners. According to Clark, Green came to his office and picked up the checks, and Green's "job was to deliver these checks to [Compton]," consistently with the manner in which Green and Clark had conducted business for over twelve years. Thus, viewed in a light most favorable to the prosecution, the evidence showed that Green had been entrusted by Clark with the act of physically delivering T.C. Logging's checks to Compton, and that, contrary to Clark's direction and without Clark's consent, Green deposited the checks in his own account. This was sufficient for any rational trier of fact to find beyond a reasonable doubt that Green had unlawfully appropriated the checks. See *Frost v. State*, 269 Ga. App. 54, 56 (1) (603 SE2d 481) (2004) (Proof that a check

5

written to another company was deposited in the account of appellant's company was sufficient to support the jury's determination that appellant had committed theft by taking.). Compare *In the Interest of E. C.*, 311 Ga. App. 549, 550 (2) (716 SE2d 601) (2011) (As the only evidence that the appellant took his sister's car without her consent was nonprobative hearsay, the evidence was not sufficient to support the appellant's adjudication of delinquency based on theft by taking beyond a reasonable doubt.).

2. Green further argues that the State failed to prove the element of intent beyond a reasonable doubt. OCGA § 16-8-2 requires that, to constitute the crime of theft by taking, an unlawful appropriation of another's property be "with the intention of depriving him of the property."

> [I]ntent may be found by the [trier of fact] upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted. Whether a defendant has the requisite intent to commit a crime is a question for the [trier of fact].

(Citation and punctuation omitted.) *Bearden v. State*, 316 Ga. App. 721, 723 (2) (728 SE2d 874) (2012). Green argues that his testimony and supporting exhibits showed that he had paid more "legitimate expenses" of his and Compton's business than the

proceeds of the checks that he was accused of taking, and that, as he was entitled to be reimbursed for his expenses, the State failed to show that he intended to deprive either Compton or Clark of their property. Whatever expenses Green might have personally incurred, the evidence showed that the checks at issue were not payable to him but were placed in his possession for their physical delivery to Compton, and that, by endorsing the checks and misrepresenting that the checks were actually payable to him, he knowingly took the proceeds of the checks for himself. The evidence was sufficient to establish Green's criminal intent. See *Frost v. State*, 269 Ga. App. at 56 (1); *Jordan v. State*, 242 Ga. App. 547, 549 (1) (b) (528 SE2d 858) (2000) (Proof that defendant deposited unauthorized checks into her own account was sufficient to support the jury's verdict that defendant committed theft by taking.).

*Judgment affirmed. Andrews and Rickman, JJ., concur.*