**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 23, 2019**

# In the Court of Appeals of Georgia

A19A0622. FORTNER v. THE STATE.

MARKLE, Judge.

Ronald Fortner was convicted of 18 counts of violation of oath by a public officer (OCGA § 16-10-1), and 11 counts of theft by deception (OCGA § 16-8-3).[1] He appeals from the denial of his motion for new trial, as amended, arguing that (1) there was a fatal variance between the indictment and the evidence at trial, and thus he was entitled to a directed verdict of acquittal; (2) the trial court erred in admitting into evidence an exhibit that was not produced during discovery; and (3) the trial court improperly barred defense counsel from arguing that certain language in the

---

[1] Fortner was also charged with 18 counts of criminal attempt to commit a felony, but was acquitted of those counts.

indictment was a material allegation the State was required to prove. After a thorough review of the record, and for the reasons discussed below, we affirm.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that Ronald Fortner was elected as the Lumpkin County coroner in 2013. Lumpkin County allows coroners to receive an annual salary in addition to charging a fee for death investigations.[2] Upon his swearing in, Fortner made the following acknowledgment in his oath of office: "I will not, under any pretense, take, accept, or enjoy any fee or reward pertaining to my office other than such as are allowed by law."

Soon after Fortner was elected coroner, he heard complaints of poor care at the Gold City Convalescent Center ("Gold City") and decided he would investigate deaths occurring there. He met with the nursing home administrator and instructed him that the nursing home staff was now required to contact the coroner whenever there was a death in the facility. Over the next two years, Fortner submitted numerous invoices seeking reimbursement for investigations he allegedly conducted.

___

[2] OCGA § 45-16-27 (b) provides: "On and after January 1, 2007, coroners shall be entitled to an investigation fee of $175.00 where no jury is impaneled . . . and shall be paid upon receipt of a monthly statement to the county treasury. . . ."

2

In 2015, the Georgia Bureau of Investigations ("GBI") began investigating Fortner at the request of the county sheriff's office. As part of the investigation, a GBI agent interviewed Fortner on two occasions.[3] In these interviews, Fortner repeatedly stated that he was investigating possible abuse at Gold City, and that he had informed the county commissioners of his investigations. He insisted that he had the right to investigate any death in the county, and he believed he properly investigated the deaths at Gold City. However, none of the investigation reports submitted for reimbursement show that Fortner actually conducted any investigation into patient deaths, and Gold City nursing staff confirmed that Fortner did not do any such investigations.

Ultimately, Fortner was indicted on 18 counts of violation of oath by a public officer and 11 counts of theft by deception for obtaining reimbursement for "pronouncing the death of" 18 different patients when he was not entitled to such reimbursement. At trial, the State proffered copies of the death investigation forms Fortner submitted for each patient showing that Fortner completed only the personal information with no indication of any investigative steps or conclusions.

---

[3] Fortner did not testify at trial. The audio recordings of his interviews with the GBI were admitted into evidence and played for the jury.

Additionally, the GBI agent, several other physicians, and Gold City staff members testified that Fortner did not come to the facility to conduct an investigation following any patient's death, and the investigation forms he submitted did not include information regarding how the deaths occurred. By way of comparison, the State proffered an unrelated investigation form of an accidental drowning that Fortner submitted in which he noted the circumstances of the death and the various steps taken as part of his investigation.

Fortner's defense at trial was that, contrary to the indictment, he had not billed the county for "pronouncing the death of" any patient, but instead had billed for conducting investigations into the deaths of these patients. At the close of the State's case-in-chief, Fortner moved for a directed verdict, arguing that the State failed to prove a material allegation in the indictment. According to Fortner, the indictment charged him with submitting reimbursements for pronouncing a death, but there was no evidence he had done so. Instead, he had submitted reimbursement for conducting investigations. The trial court ultimately denied the motion, finding the language in the indictment that Fortner "pronounced death" was not a material allegation.

The jury convicted Fortner of all counts for violating his oath of office and theft by deception. Thereafter, Fortner filed a motion for new trial, as amended,

arguing that (1) the evidence was insufficient to show that he pronounced the death of any patient, and thus he was entitled to a directed verdict of acquittal; (2) the trial court erred in allowing into evidence exhibit 38, which was a death certificate that was not produced during discovery; and (3) the trial court improperly limited his closing argument to prevent him from arguing that "pronouncement of death" was a material allegation in the indictment.

At the hearing on the motion for new trial, trial counsel testified that his sole defense strategy was to argue that Fortner had not billed for pronouncing anyone's death, and pronouncing a death was different from conducting a death investigation. He stated that he argued in his motion for directed verdict that this was a fatal variance between the evidence adduced at trial and the indictment.

The trial court denied the motion for new trial, as amended, finding there was no fatal variance because Fortner was on notice of the charges against him and was able to argue his defense, and that any error in admitting exhibit 38 was harmless. Fortner now appeals.

1. Fortner first argues that the trial court erred in denying his motion for directed verdict of acquittal because there was a fatal variance between the evidence at trial and the indictment. He contends that the indictment charged him with

5

committing the crimes by seeking reimbursement for "pronouncement of death," and that this language was not surplusage. We are not persuaded.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [Fortner] no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency, not the weight of the evidence, and does not judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve.

(Citation, punctuation and emphasis omitted.) *Pippins v. State*, 263 Ga. App. 453, 453-454 (1) (588 SE2d 278) (2003).

To convict Fortner of violating his oath of office, the State had to prove that he willfully and intentionally violated his oath by requesting and receiving payment for services for which he was not entitled to be paid. OCGA § 16-10-1. In regard to this offense, the State charged Fortner with receiving payment for "pronouncing the death of" patients "when said services as coroner did not merit payment in this circumstance."

6

To convict Fortner of theft by deception, the State was required to prove that Fortner "obtain[ed] property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). As charged in the indictment, the State alleged that Fortner "intentionally created an impression of fact which was false, that he was entitled to payment for pronouncing [patients] dead when he was not entitled to said payment." See OCGA § 16-8-3 (b) (1).

"We review the sufficiency of an indictment to determine whether a defendant was misled to his prejudice." (Citation and punctuation omitted.) *Brown v. State*, 302 Ga. App. 641, 644 (2) (692 SE2d 9) (2010).

As we have explained,

[w]hile an unnecessary description of an unnecessary fact averred in an indictment need not be proved, in criminal law even an unnecessarily minute description of a necessary fact must be proved as charged. If the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance. To permit the prosecution to prove that a crime was committed in a wholly different manner than that specifically alleged in the indictment would subject the accused to unfair surprise at trial and constitute a fatal variance.

7

(Citation omitted.) *Ford-Calhoun v. State*, 327 Ga. App. 835, 836 (1) (761 SE2d 388) (2014). Nevertheless,

> [o]ur courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

(Citations omitted.) *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

Applying this two-part test here, we conclude that there was no fatal variance from the indictment, and thus the trial court properly denied the motion for a directed verdict of acquittal. Fortner was clearly on notice of the offenses he allegedly committed — seeking reimbursements he was not entitled to receive. Furthermore, the indictment identified the patients' names and gave the dates on which Fortner received reimbursement. Fortner would have known that he submitted death investigation reports for those patients – and not pronouncements of death – and thus would have known that the charges related to those submissions. When we ignore the

8

"pronouncement of death" language in the indictment, the remainder sufficiently alerted Fortner to the allegations against him. See *Quiroz v. State*, 291 Ga. App. 423, 425 (1) (662 SE2d 235) (2008). Fortner's defense at trial was that he had not pronounced any deaths, but had instead conducted investigations. See *Brown*, 302 Ga. App. at 644 (2) (defendant was able to argue theory of defense and was not mislead or surprised by language in indictment). However, there was sufficient evidence from which the jury could conclude that Fortner did not actually conduct death investigations, and that by submitting invoices seeking reimbursement he violated his oath of office and committed theft. Finally, due to the nature of the indictment, which named the specific patients whose deaths were at issue, Fortner is adequately protected against any further prosecution related to those submissions. *Brown*, 302 Ga. App. at 644 (2).

We find this case indistinguishable from those cases in which we have found no fatal variance. See *Moon v. State*, 335 Ga. App. 642, 647 (2) (782 SE2d 699) (2016) (no fatal variance where indictment charged defendant with possession of pornographic photographs but evidence showed he possessed digital images); *Leonard v. State*, 326 Ga. App. 209, 211 (756 SE2d 293) (2014) (no fatal variance where indictment charged that defendant had stolen a cell phone but the evidence

9

showed he had stolen a tablet); *Brown*, 302 Ga. App. at 644 (2) (indictment placed defendant on notice of theft charges where it alleged that defendant took currency but the evidence showed she obtained the money through false purchase orders because "currency" in the indictment was not an essential element); *Quiroz*, 291 Ga. App. at 425 (1) (indictment charging aggravated assault with a deadly weapon by holding a knife to the victim's neck was not a fatal variance because holding the knife to the victim's neck was an unnecessary specification). Following this line of cases, we are compelled to conclude that the "pronouncement of death" language was an unnecessary specification and its inclusion did not result in a fatal variance between the indictment and the proof at trial.

2. Fortner next argues that the trial court erred in allowing exhibit 38 into evidence, and then reconsidering and excluding it, because the jury had already been made aware of the exhibit. We discern no error.

Exhibit 38 involved the death certificate of one of the Gold City patients and was the only document that identified Fortner as the person pronouncing the patient's death. But this information was harmless because it was cumulative of the pronouncement of death that was admitted as part of another exhibit. *Long v. State*, 265 Ga. App. 605, 608 (1) (595 SE2d 93) (2004) (admission of cumulative evidence

10

was harmless). Moreover, the trial court later removed the exhibit from evidence, and it did not go out with the jury during deliberations. As such, the initial admission of this exhibit was harmless. OCGA § 24-1-103 (a); *Long*, 265 Ga. App. at 608 (1).

3. Finally, Fortner contends that the trial court erred when it limited his closing argument and prohibited him from using the term "material allegation" to refer to the "pronouncement of death" language in the indictment. We disagree.

"The trial court has the discretion to determine the range of proper closing argument." (Citations omitted.) *Williams v. State*, 279 Ga. 600, 602 (2) (619 SE2d 649) (2005). This includes limiting the content. Id.

In light of our conclusion in Division 1 that the pronouncement of death language was not material, the trial court did not abuse its discretion in limiting closing argument. Advising the jury that this language was a material allegation would have been an incorrect statement of the law, and therefore, the trial court was within its discretion to limit closing argument in this regard. See, e.g., *Battle v. State*, __ Ga. __ (3) (824 SE2d 335, 341-342 (3)) (2019 WL 654187) (2019) (prosecutor's incorrect statement of the law during closing argument resulted in admonishment from trial court and curative instruction to the jury).

11

Moreover, defense counsel was able to argue that the State had not proven every element of the crimes and had not shown that Fortner pronounced death for any of the identified patients or that he had claimed to have pronounced the death of any of those patients. Although the trial court instructed defense counsel not to use the term "material allegation," the trial court did not limit counsel's ability to argue his defense. This enumeration is without merit.

Accordingly, for the foregoing reasons, we affirm the trial court's order denying Fortner's motion for new trial.

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur.*