**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 8, 2016**

# In the Court of Appeals of Georgia

A16A0216. WILHITE v. THE STATE.

McMILLIAN, Judge.

David Wilhite appeals the denial of his motion for new trial after a jury convicted him of aggravated sodomy, burglary, and terroristic threats. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence showed that the victim, who was seven months pregnant, was home alone with her two-year-old daughter when she saw a man she did not know dressed in dark clothing in her mother's room. As the man turned to look at her, the victim saw that his penis was exposed. The victim turned to run toward her daughter, and the man chased her and forced her to the ground, demanding oral sex. When the victim refused, the man

---

[1] _Jackson v. Virginia_, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

threatened to kill both mother and daughter. He then ripped off the victim's underwear and penetrated her anally. Afterwards, the man wiped the victim off with a cloth and ran back toward the bedroom, while the victim ran with her daughter to summon help.

The victim was taken to a hospital and examined, and her rape kit yielded DNA evidence that was later matched to Wilhite. The police also found a window screen in the victim's home that was torn and bent, although her brother testified that it had been intact when he left the house earlier in the day.

1. Wilhite first contends that his trial counsel was ineffective in failing to object to jury instructions that he claims impermissibly "tilted the credibility scales in the State's favor."

To support his claim of ineffective assistance of counsel, Wilhite must demonstrate that his counsel's performance at trial "was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). Thus, "[w]hen a defendant raises an ineffective assistance of counsel claim based on counsel's failure to request or object to certain jury charges, the defendant

must show that the charges in question were erroneous and that, if proper charges had been given, there is a reasonable probability that the result of the trial would have been different." (Citation and punctuation omitted.) *Gathuru v. State*, 291 Ga. App. 178, 182 (3) (661 SE2d 233) (2008). And if the defendant fails to meet his burden on one prong of this two-prong test, we need not review the other prong. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).[2]

(a) Wilhite first takes issue with the trial court's charge to the jury that "if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement." He argues that this charge "inappropriately urged the jury to make every possible effort to believe [the victim]."

This portion of the trial court's charge tracked the language of the Suggested Pattern Jury Instructions that was in effect at the time of Wilhite's 2012 trial. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (the "Pattern Charge(s)"), § 1.31.20 (4th ed. 2007). This provision has since been deleted from the Pattern Charges. See January 2013 updates to the Pattern Charges.

---

[2] Wilhite's trial counsel testified at the hearing on the motion for new trial that at the time of Wilhite's trial, he had been practicing law for almost 30 years, the last 25 years of which he had limited exclusively to criminal work, and had handled hundreds of felony trials.

3

Although in 1998, our Supreme Court recommended that this charge not be used, it also found that the use of the charge "is not unconstitutional and does not constitute reversible error." See *Whatley v. State*, 270 Ga. 296, 300 (10) (b) (509 SE2d 45) (1998). And more recently, the Supreme Court found no error in giving the charge, noting that it "was not a 'presumption of truthfulness' charge. The jury instruction did not require that the jury believe the testimony of any witness, whether impeached or unimpeached." (Citation omitted.) *Rai v. State*, 297 Ga. 472, 481 (8) (775 SE2d 129) (2015). See also *Smith v. State*, 292 Ga. 588, 590 (3) (740 SE2d 129) (2013) (finding no error in giving of jury instruction tracking the language of former § 1.31.20). The Court also concluded that the charge "did not invade the province of the jury to assess witness credibility or improperly shift the burden of proof." *Rai*, 297 Ga. at 481 (8).

Accordingly, the charge was not erroneous, and Wilhite cannot establish the first prong of his claim of ineffective assistance on this ground.

(b) Wilhite also asserts that his trial attorney should have objected to the trial court's charge on impeachment because the court failed to charge that a witness may be impeached by disproving facts, which is one of the methods of impeachment listed in Pattern Charge § 1.31.40. During the charge conference, the trial judge announced

4

that she would be giving the Pattern Charge addressing impeachment but would tailor the charge to the evidence in the case. She then asked Wilhite's attorney if the evidence had involved "disproving the facts to which the witness testified" as set forth under subsection (a) of that charge. Wilhite's counsel replied, "I don't think so, judge. Not disproving. We may have prior inconsistent statements, but not that." Wilhite's trial counsel later testified at the hearing on the motion for new trial that based on the evidence, he believed "there wasn't anything that would have disproved what the victim testified to."

Pretermitting whether Wilhite's counsel's failure to request the charge somehow constituted deficient performance, we find that Wilhite has failed to establish that he was prejudiced by the omission of this charge. "To determine whether a jury charge is likely to have misled or confused the jury . . . , we must consider the charge as a whole, reading all of its parts in conjunction with each other." *Marriott v. State*, 320 Ga. App. 58, 64 (2) (b) (739 SE2d 68) (2013). See also *Garland v. State*, 311 Ga. App. 7, 11 (1) (c) (714 SE2d 707) (2011) ("An instruction on impeachment must be read in conjunction with the entire final charge."). Here, the trial court instructed the jury on the presumption of innocence; the State's burden of proof; direct and circumstantial evidence; reasonable doubt; credibility of witnesses

5

and the jury's burden to determine whom to believe or not to believe; conflicts in the evidence as noted above; and proof of impeachment by contradictory statements. Accordingly, the trial court's charge, when read as a whole, was sufficient to inform the jury how to properly consider and weigh the evidence in this case. Under these circumstances, we find that reversal is not warranted based on Wilhite's failure to object to the charge on impeachment.

(c) Wilhite also asserts that his trial counsel was ineffective in failing to object to the trial court instruction's that "[t]he testimony of a single witness is generally sufficient to establish a fact." He asserts that the charge should have included the qualifying language "the testimony of a single witness, *if believed*, is generally sufficient to establish a fact," as set forth in § 1.31.90 of the Pattern Charges. (Emphasis supplied.) Once again, pretermitting whether Wilhite's counsel rendered ineffective assistance by failing to object to this omission, we find that Wilhite has failed to show the requisite prejudice in light of the trial court's full charge to the jury, which included an instruction that the jury must determine witness credibility and decide which witnesses to believe or not to believe.

Accordingly, Wilhite has failed to establish his claim of ineffective assistance of counsel based on his attorney's failure to object to the cited jury charges.

6

2. Wilhite next asserts that his conviction is invalid because one of the jurors at his trial allegedly had a hearing difficulty, and the trial court should have allowed an evidentiary hearing to determine whether the juror could follow the evidence at trial. He further asserts that his trial counsel rendered ineffective assistance by failing to litigate the issue of the juror's hearing.

Following a question by the trial court clerk during voir dire, Juror 2, stated, "I can't hear too well" and then instructed the prosecutor to "[s]peak a little louder." Wilhite's attorney followed up on the juror's statement about her hearing by asking, "Speaking in this tone of voice, are you able to hear everything fine?" The juror replied, "So far." Wilhite's trial counsel raised no objection to Juror No. 2, and she was empaneled as a juror. At the end of trial, after the jury returned its verdict, Wilhite asked that the jury be polled. During this process, Juror No. 2 stated in response to several questions from the trial court clerk that she could not hear what the clerk was asking her.

Three years after trial, Wilhite's post-conviction counsel filed a written motion to question Juror No. 2 about her hearing difficulties, and the parties argued the matter at the hearing on Wilhite's motion for new trial. When questioned about the issue, Wilhite's trial counsel could not recall that the juror had hearing problems

7

during the poll of the jury, but after refreshing his recollection with a review of the trial transcript, counsel stated that he did not even consider the issue of the juror's hearing at that point. He also testified that he never observed any of the jurors not paying attention or not being able to follow the direction of the court or the verbal commands of the bailiff.

The trial court subsequently denied the motion to question the juror in its order denying Wilhite's motion for a new trial. The trial court stated that after reviewing the transcript, especially the voir dire of Juror No. 2, it was satisfied that "the juror in question was qualified and competent to serve."

We find that the record in this case supports the trial court's determination. During voir dire, Juror No. 2 was able to answer numerous questions posed by counsel and the trial court with no difficulty. Although she appeared to have some trouble hearing when the trial court clerk spoke to her, first during voir dire and later when the jury was polled, these difficulties were not sufficient to prompt Wilhite's attorney to address the matter further.

Wilhite nevertheless argues that he should have been allowed to question Juror No. 2 because the issue of the juror's hearing potentially affected his constitutional right to a fair trial. However, Wilhite has failed to establish a basis for allowing the

8

questioning of Juror No. 2 on constitutional grounds. Juror No. 2 informed the Court and counsel during voir dire that she could not "hear well," and Wilhite's attorney followed up at that time by testing the juror's hearing and he had the opportunity to object to her service as a juror if he was concerned about her ability to hear the evidence. Accordingly, Wilhite had both notice of the juror's hearing issues and the opportunity to address the issue before trial, which provided the requisite due process. See *Hood v. Carsten*, 267 Ga. 579, 580 (481 SE2d 525) (1997) ("Both the Georgia and United States Constitutions prohibit the state from depriving any person of life, liberty, or property, without due process of law. The fundamental idea of due process is notice and an opportunity to be heard.") (citations and punctuation omitted).

Under these circumstances, we cannot say that the trial court abused its discretion in denying Wilhite's motion to question Juror No. 2. See *State v. Smith*, 308 Ga. App. 345, 353 (2) (707 SE2d 560) (2011) (trial court's evidentiary rulings reviewed for abuse of discretion); *Cauley v. State*, 203 Ga. App. 299, 301 (1) (416 SE2d 575) (1992) (applying abuse of discretion standard to trial court's refusal to open evidence, which defendant contended violated his constitutional right to compel witnesses to testify).

(b) Based on this record showing Juror No. 2's demonstrated ability to hear and respond not only to Wilhite's counsel's direct question about her hearing, but also to his other questions and the questions posed by the prosecutor, we find that Wilhite has failed to show that his attorney rendered deficient performance in failing to challenge Juror No. 2 or in failing to follow up on the juror's hearing issues after the jury was polled.

> Trial counsel's decisions about which jurors to strike and which to keep are tactical. And counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel. Indeed, tactical decisions by counsel will not form the basis for an ineffective assistance claim unless the decisions are so patently unreasonable that no competent attorney would have chosen them.

(Citation omitted.) *Ware v. State*, 321 Ga. App. 640, 642 (3) (742 SE2d 156) (2013).

3. Wilhite further argues that the evidence at trial was insufficient to support his conviction on the burglary charge. He asserts that a fatal variance existed between the indictment and the proof because the indictment charged that the burglary occurred at the victim's "dwelling house" at one address, when the evidence showed the incident occurred at another dwelling house.

10

The indictment alleged that Wilhite, "without authority and with the intent to commit Aggravated Sodomy, a felony, therein, did enter and remain in the dwelling house of [the victim], located [on Velma Court]." However, the evidence at trial indicated that at the time of the incident the victim lived on Spring Point, and the crime occurred at that location. After the attack, the victim moved to her grandmother's house, which apparently was on Velma Court.

In Georgia, "[w]e no longer adhere to an overly technical application of the fatal variance rule, focusing instead on materiality." (Citation omitted.) *Chambers v. State*, 284 Ga. App. 400, 401 (1) (643 SE2d 871) (2007).

> The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance "fatal."

(Citation omitted.) *Williams v. State*, 332 Ga. App. 546, 550 (2) (774 SE2d 126) (2015).

11

Wilhite does not argue that he was surprised by the evidence of the crime scene location at trial, and, in fact, his trial attorney testified at the hearing on the motion for new trial that he was aware while he was preparing for trial that the alleged crime scene was on Spring Point and that he was not surprised by the evidence at trial to that effect.

Nevertheless, Wilhite asserts that the erroneous indictment exposes him to a second prosecution for the same offense. However, the burglary charge in the indictment alleges that he entered the victim's dwelling house with the intent of committing aggravated sodomy upon the victim, and the material facts established at trial showed that this attack occurred at the Spring Point address. The State cannot use these facts to prosecute Wilhite a second time for this crime. See *State v. Jackson*, 290 Ga. App. 250, 251 (1) (659 SE2d 679) (2008).[3]

---

[3] In *Jackson*, the State's initial indictment charged the defendant with burglary at the wrong address, on the wrong date, with the wrong accomplice, and at the trial in that case, after jeopardy had attached, the trial court allowed the State to nolle prosse the indictment, over defendant's objection. However, when the State later re-charged the defendant with burglary under an indictment with the correct information, the trial court granted defendant's plea in bar on the ground of double jeopardy. *Jackson*, 290 Ga. App. at 250. This Court affirmed, noting that "although the first indictment alleged different facts, the same facts alleged in the second indictment were introduced during Jackson's first trial," id. at 251 (1), and the defendant could be not subject to a second prosecution on these facts.

Accordingly, the trial court properly denied Wilhite's motion for new trial on this ground. See *Chambers*, 284 Ga. App. at 401-02 (1) (finding no fatal variance where indictment asserted burglary occurred at a nonexistent address and burglary occurred on three adjacent properties owned by victim); *Day v. State*, 254 Ga. App. 286, 287 (2) (562 SE2d 252) (2002) (no fatal variance where indictment alleged non-existent address, because "[t]he specific location was not an element of the crime [of burglary] charged against [the defendant], and the precise location charged in the indictment was mere surplusage.") (citation and punctuation omitted).

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*