**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 22, 2021**

# In the Court of Appeals of Georgia

A21A0163. PALENCIA v. THE STATE.

COLVIN, Judge.

On appeal from his conviction for crimes committed during a home invasion, including burglary, kidnapping with bodily injury, aggravated assault, rape, aggravated sodomy, and cruelty to children, Francisco Palencia argues that there was a fatal variance between the allegations and the proof and that the trial court erred in its admission of evidence subject to the rape shield law and in its charge to the jury. Palencia also asserts that trial counsel was ineffective. We find no reversible error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165)

(2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in May 2017, Jose Carranza-Castro, who was serving time in federal prison, hired Palencia and Josue Ramirez-Aguilar to beat and disfigure Carranza-Castro's ex-girlfriend, with whom he had a child. On May 8, 2017, Palencia and Ramirez-Aguilar, accompanied by two women, knocked on the victim's door and, when she refused to admit them, broke one of her apartment windows. When the victim called police, the burglars fled. When the same group returned to the victim's apartment on May 12, 2017, they broke in and stole shoes, clothing, electronics, and the victim's puppy. After attempting to track the victim as she returned home from work, the men reentered the apartment to lie in wait for her while the women waited outside.

When the victim entered her apartment with her two children, Palencia and Ramirez-Aguilar threw her to the floor, beat her, tased her, and dragged her into the kitchen, where Ramirez-Aguilar threw boiling water on her in front of the two

children present. The hot water caused second-degree burns and blistering. When the victim retreated to her bedroom, Palencia followed her and demanded that she take off her dress and give him oral sex. After the victim complied, Palencia ordered her to lie down and then raped her. The men left soon afterward. Police responded to the victim's 911 call and took her to a hospital, where an exam did not produce DNA evidence of the rape.

Palencia was apprehended and charged with attempted first-degree burglary (Count 1), two counts of first-degree burglary (Counts 2 and 3), kidnapping (Count 4), aggravated battery (Count 5), aggravated assault (Count 6), aggravated sodomy (Count 7), rape (Count 8), and two counts of first-degree cruelty to children (Counts 9 and 10).[1] A jury found him guilty of all these with the exception of the second cruelty count, which it reduced to third-degree cruelty. Palencia was sentenced to 111 years plus life in prison. His motion for new trial was denied, and this appeal followed.

1. Palencia first argues that there were fatal variances between the allegations and proof of Counts 3 (first-degree burglary) and 6 (aggravated assault). We disagree.

---

[1] Carranza-Castro, Ramirez-Aguilar, and the two women were charged as co-defendants. Ramirez-Aguilar pled guilty to all the charges.

Under Georgia law, the "true inquiry" concerning a variance "is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused." (Citation and punctuation omitted.) *Wilhite v. State*, 337 Ga. App. 324, 329 (3) (787 SE2d 293) (2016).

> [T]he allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and . . . the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance "fatal."

(Citation and punctuation omitted.) Id.

Here, Count 3 alleged that Palencia "remain[ed]" in the victim's "dwelling house . . . unlawfully without authority and with the intent to commit" the felony of aggravated battery, while Count 6 alleged that he assaulted the victim by "brandishing" a taser at her. The evidence at trial was that Palencia entered *and* remained in the victim's house without authorization, and also that he actually tased the victim. As this Court has repeatedly held in such cases, the variances between the allegations and the proof were not fatal to Palencia's conviction because the indictments put him on sufficient notice of the charges against him. See *Rubaldino v. State*, 271 Ga. App. 726, 728 (1) (611 SE2d 68) (2005) (no fatal variance between

4

allegation that defendant committed burglary when he entered the victim's house without permission and proof that he entered the house with permission but the victim's bedroom without permission); *In the Interest of J. A. C.*, 291 Ga. App. 728, 730 (2) (662 SE2d 811) (2008) (no fatal variance between allegation that defendant assaulted victim by hitting him with a baton and proof that he "merely advanced" on him); *Quiroz v. State*, 291 Ga. App. 423, 425 (1) (662 SE2d 235) (2008) (no fatal variance between indictment alleging that defendant held knife to victim's neck and proof that defendant only pointed it at him).

2. Palencia also argues that the trial court plainly erred when it authorized the admission of the State's evidence that the rape kit exam showed signs of male DNA, but not Palencia's, because she had voluntary intercourse the day before the attack with a different man. We agree that the trial court erred when it admitted the evidence, but we conclude that a new trial is not warranted.

In 2019, the Supreme Court of Georgia noted that unlike Federal Rule of Evidence 412, OCGA 24-4-412 (a) does not exempt evidence offered by the State from its prohibition against the admission of "evidence relating to the past sexual behavior of the complaining witness[.]" OCGA § 24-4-412 (a), cited in *White v. State*, 305 Ga. 111, 115-117 (1) (823 SE2d 794) (2019). Thus "a *defendant* is authorized to

5

invoke Georgia's Rape Shield law in order to prohibit the admission of evidence of a witness's past sexual behavior offered by the State." (Emphasis supplied.) Id. at 118 (1). This trial court therefore erred when it admitted testimony concerning this victim's sexual behavior into evidence. See id. at 119 (3). But we must also consider whether this assumed error could amount to "plain error," as follows:

> First, there must be an error or defect . . . that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, *the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings*. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis supplied.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Although we cannot agree with the State that Palencia affirmatively waived his claim of error, Palencia cannot show that the trial court's error affected his substantial rights.

At the time of this trial, in October 2016, some Court of Appeals authority held that evidence of a complaining witness's past sexual behavior was admissible under

6

a so-called "relevance" exception to the Rape Shield Statute. See, e.g., *Bill v. State*, 341 Ga. App. 340, 341-342 (1) (a) (799 SE2d 28) (2017) (overruled by *White*, supra); *Orengo v. State*, 339 Ga. App. 117, 128 (10) (793 SE2d 466) (2016) (same); and other cases following *Demetrios v. State*, 246 Ga. App. 506, 514 (7) (c) (541 SE2d 83) (2000). As our Supreme Court pointed out in *White*, however, an older line of authority had "properly recognized that, by its terms, [the] Rape Shield Statute applied to *exclude* evidence offered by the State." (Emphasis supplied.) *White*, 306 Ga. at 120 (3), citing *Johnson v. State*, 146 Ga. App. 277, 280 (2) (246 SE2d 363) (1978) ("there is no method by which the [S]tate can properly introduce the proscribed evidence" under the Rape Shield Statute), and *Herndon v. State*, 232 Ga. App. 129, 132 (2) (499 SE2d 918) (1998) (trial court erred in allowing State to introduce evidence at trial that was inadmissible under the Rape Shield Statute). When this trial court followed the newer and incorrect line of cases in 2016, it committed "clear or obvious" error. *White*, 305 Ga. at 123 (3) (finding such error as to a 2014 trial).

We cannot conclude, however, that this error likely affected the outcome of this trial. Evidence that the victim had sex with another man shortly before the attack at issue could only benefit Palencia by undermining the victim's character. Further,

7

Ramirez-Aguilar, who pled guilty to the rape, admitted to this jury that he was the person who threw water on the victim and that the two men acted in concert in assaulting the victim in front of her children.[2] Under these circumstances, the admission of evidence as to the victim's sexual encounter with another man on the day before the attack was not likely to affect the outcome of these proceedings or affect Palencia's substantial rights. Thus Palencia cannot show that the trial court committed plain error in admitting that evidence. See *White*, 305 Ga. at 123 (3) (when State's references to a victim's prior sexual behavior and expert testimony that a victim of child molestation was more likely to molest others "were minimal," the defendant could not show that the admission of the evidence likely affected the outcome).

3. Palencia also asserts that the trial court committed plain error when it (a) failed to charge the jury on the necessity for corroboration of an accomplice's testimony and (b) charged the jury on aggravated assault and burglary. We disagree.

(a) Palencia cites *Stanbury v. State*, 299 Ga. 125 (786 SE2d 672) (2016), for the proposition that a trial court's failure to charge the jury on the necessity for

_____

[2] As the prosecutor stated on redirect examination of Ramirez-Aguilar, "[N]ever in a million years would I dismiss the rape count as it pertains to you even if you were just a lookout[.]"

corroboration of an accomplice's testimony may be plain error. See id. at 130-131 (2), citing OCGA § 24-14-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness" is "[in]sufficient to establish a fact."). *Stanbury* is not on point, however, because this victim survived the attack and testified at trial that a man matching Palencia's description raped her. Because the victim was a competent witness as to her own rape, Ramirez-Aguilar was not the only witness to it, and no corroboration of the victim's testimony was necessary. See *Glaze v. State*, 317 Ga. App. 679, 681-682 (1) (732 SE2d 771) (2012) (given the absence of any corroboration requirement in the rape statute, a victim's testimony that she was raped by someone matching the defendant's description was sufficient to sustain the rape conviction); see also *Baker v. State*, 245 Ga. 657, 665-666 (5) (266 SE2d 477) (1980) (noting the General Assembly's 1978 removal of the corroboration requirement from OCGA § 16-6-1).

(b) (i) Palencia asserts that the trial court erred when it charged the jury that aggravated assault could be committed by either threatening or accomplishing an assault with a deadly weapon because the indictment charged him with merely "brandishing" rather than using a taser. We understand that

9

> [i]t is error to charge the jury that a crime may be committed by alternative methods, when the indictment charges it was committed by one specific method. If there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment, then the conviction is defective because of a fatal variance between the proof at trial and the indictment returned by the grand jury.

(Citation and punctuation omitted.) *Dudley v. State*, 283 Ga. App. 86, 87 (1) (640 SE2d 677) (2006). As we held in Division 1, however, the variance between the allegation that Palencia brandished the taser and the proof that he actually tased the victim was not material and therefore not fatal. The same is true of the charge, which provided alternative methods of proving aggravated assault but did not mislead the jury when it did so.

The trial court instructed this jury that a person commits aggravated assault "when that person assaults another with any object . . . that when used offensively against a person is likely to *or actually does* result in serious bodily injury[.]" The fact that the charge went on to detail the first alternative – that "actual injury to the alleged victim need not be shown" – does not render the charge erroneous. A charge citing sections of the assault and aggravated assault statutes "is not error where [only] a portion of the section[s are] applicable so long as it does not appear that the

10

inapplicable part misled the jury." (Citation and punctuation omitted.) *Dudley*, 283 Ga. App. at 88 (1). This jury could not have been misled when the indictment, the proof, and the charge all asked the jury to determine whether Palencia's offensive use of the taser against the victim amounted to aggravated assault. There was no error. Id. (no error in charging inapplicable portions of the aggravated assault statute when "the charge cannot reasonably be deemed to have presented the jury with an alternative basis for finding the appellant guilty of [an] aggravated assault not charged in the indictment") (citation omitted).

(ii) For the same reasons, there was no basis for objection to the trial court's charge on burglary when the indictment charged Palencia with "remain[ing] within" the victim's apartment; when the proof showed that he illegally entered the apartment *and* lay in wait for her there; and when the trial court instructed the jury that a person commits first-degree burglary when, "with the intent to commit a felony therein, that person *enters or remains* within the dwelling of another." (Emphasis supplied.) See *Dudley*, 283 Ga. App. at 88 (1); *Jackson v. State*, 260 Ga. App. 848, 849 (1) (581 SE2d 382) (2003) (no error in omitting word "therein" from burglary charge concerning entering or remaining in a dwelling with intent to commit a felony when

11

the charge tracked the statute and when the jury was charged on intent such that it "could not have been confused or misled").

4. Palencia also argues that trial counsel was ineffective when he failed to challenge the validity of the search warrant issued as to the victim's apartment. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *White v. State*, 265 Ga. 22, 22 (2) (453 SE2d 6) (1995). As to prejudice, a defendant need only show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. (Punctuation and footnote omitted.) *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008).

More specifically, and as the Supreme Court of Georgia has held:

[A] magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty in reviewing the magistrate's decisions in this case is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrants. A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. Even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper.

(Citations and punctuation omitted.) *Prince v. State*, 295 Ga. 788, 792 (2) (a) (764 SE2d 362) (2014).

Although Palencia asserts that the search warrant was not sufficiently specific in that it failed to identify the victim's apartment number, the affidavit attached to the warrant specified that number and also added that "apartment [#B] is on the right side of the house." Because a prudent officer could locate this apartment "with reasonable certainty" based on the entirety of the warrant, including the supporting affidavit, the warrant was adequate. *State v. Hicks*, 269 Ga. App. 741, 742-743 (605 SE2d 34) (2004) (affirming validity of search pursuant to a warrant despite a scrivener's error

13

on the affidavit). Further, and despite Palencia's attack on the victim's credibility, we are not authorized to contradict the magistrate's implicit determination that her account was sufficiently credible to establish probable cause for the search. See *Prince*, 295 Ga. at 792 (2) (a) (evidence including witness accounts was sufficient to establish probable cause to search defendant's house).

For these reasons, a motion to suppress the search warrant based on lack of specificity or probable cause "would have failed, and this ineffective assistance of counsel claim also fails." (Citation omitted.) *Prince*, 295 Ga. at 792 (2) (a).

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*