**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 25, 2022**

# In the Court of Appeals of Georgia

A22A0627. HARDY v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Kevin Chad Hardy guilty of one count each of violating the Computer or Electronic Pornography and Child Exploitation Prevention Act (Count 1) and attempted child molestation (Count 2). He appeals from the denial of his motion for a new trial, arguing that: (i) the trial court violated his rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 USC § 12101 et seq., and to due process and a fair trial by failing to ensure that he could communicate effectively in light of his hearing impairment; and (ii) his trial counsel rendered ineffective assistance. For the reasons that follow, we discern no reversible error and affirm the trial court's judgment.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Duran v. State*, 274 Ga. App. 876, 877 (1) (619 SE2d 388) (2005). So viewed, the evidence shows that, in February 2018, a female police detective worked with a law enforcement task force targeting internet-related crimes against children. As part of that operation, the detective posed as a man with a stepdaughter and posted the following advertisement on the Craigslist website:

Looking for fun — mw4m (Brunswick)

Stepdad and daughter in town looking for fun. Willing to host. HMU if your [sic] interested.

The detective testified that the abbreviation "mw4m" stands for "male and woman . . . looking for another male" and that the abbreviation "HMU" stands for "[h]it me up."

Hardy responded electronically to the advertisement, stating that he was "very interested," and provided a nude picture of himself. The detective (still posing as a man) and Hardy then exchanged several electronic messages, in which the detective asked Hardy "what [he had] in mind" and Hardy requested a picture of the man's stepdaughter. The detective sent Hardy a picture of herself (as the stepdaughter) and

2

followed up with a message asking, "[Y]ou good with her being younger?" The following exchanges then ensued:

> [Hardy:] Yeah I'm good with her being younger. How old is she? I love having sex with a hot little stranger and then some.
>
> [Detective:] cool man she is 15 and she is hot[1]
>
> [Hardy:] Oh yeah? So how you wanna do this and where do I go? Do you have another pic of her?
>
> Whoa I didn't know she wasn't legal
>
> [Detective:] hell yea. you can come to the house where were staying. were on exit 7 in woodbine
>
> [Hardy:] Yeah she's cute man! You have the address?
>
> [Detective:] nothings for free she wants wine coolers.

When the detective asked if Hardy had "protection," he responded, "Yeah I got protection. Does she like to give head?" Hardy asked if the stepdaughter had seen his picture, and the detective responded, "oh yea she was really turned up." As the two made arrangements to meet later that night, Hardy asked what type of wine coolers

---

[1] We have preserved the original capitalization, spelling, and punctuation of the electronic messages introduced during Hardy's trial.

3

the stepdaughter wanted, and the detective responded, "She said Mango Seagram's." Hardy was arrested when he arrived at the address provided by the detective; he was carrying a paper bag with alcoholic beverages and condoms.

Hardy testified in his own defense, claiming that he believed the woman in the pictures he received (and was going to visit) was an adult. The jury found him guilty of one count each of violating the Computer or Electronic Pornography and Child Exploitation Prevention Act and attempted child molestation. The trial court denied Hardy's motion for a new trial, and this appeal followed.

1. Hardy contends that the trial court violated his rights under the ADA and to due process and a fair trial by failing to ensure that he was able to effectively communicate and participate in the proceedings. He claims that, "because he could not follow or understand much of the sign language" provided by court-assigned interpreters, he could not "meaningfully participate in his own defense." According to Hardy, "despite . . . obvious communication problems," the trial court took no remedial action to ensure that he could understand and fully participate in the proceedings. In that regard, Hardy faults the trial court for failing to (a) ask him directly what type of auxiliary aid or service would best ensure his ability to effectively communicate during his trial or (b) affirmatively take other steps to ensure

that he understood the proceedings. Moreover, Hardy maintains, by denying his motion for a new trial on this ground, the trial court improperly shifted the burden to him to ensure that his rights under the ADA were not violated. Hardy asserts that prejudice should be presumed from the trial court's failure to follow the ADA's mandates. We discern no reversible error by the trial court.

"A criminal defendant's right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings is guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution." *Ling v. State*, 288 Ga. 299, 300 (1) (702 SE2d 881) (2010) (citation and punctuation omitted). Consequently, "due process concerns are raised when a defendant cannot comprehend the testimony of the trial witnesses and thus cannot meaningfully participate in his defense." *Neugent v. State*, 294 Ga. App. 284, 288 (2) (668 SE2d 888) (2008). In that vein, "[o]ne who is unable to communicate effectively in English and does not receive an interpreter's assistance is no more competent to proceed than an individual who is incompetent due to mental incapacity." *Ling*, 288 Ga. at 301 (1). "[E]very criminal defendant — if the right to be present is to have meaning — must possess sufficient present ability to consult

5

with his lawyer with a reasonable degree of rational understanding." Id. (citation and punctuation omitted).

For these reasons,

[i]t is the policy of the State of Georgia to secure the rights of hearing impaired persons who, because of impaired hearing, cannot readily understand or communicate in spoken language and who consequently cannot equally participate in or benefit from proceedings, programs, and activities of the courts . . . unless qualified interpreters are available to assist such persons.

OCGA § 24-6-650; see also generally *Ramos v. Terry*, 279 Ga. 889, 892 (1) (622 SE2d 339) (2005) ("The use of qualified interpreters is necessary to preserve meaningful access to the legal system for persons who speak and understand only languages other than English."). Thus, under OCGA § 24-6-652 (a) (1), Georgia agencies — including courts — are required to "provide a qualified interpreter to [a] hearing impaired person . . . [w]henever the hearing impaired person is a party to the proceeding." See also OCGA § 24-6-651 (1) (defining "[a]gency" to include "any . . . court . . . of the . . . judicial . . . branch of government of this state"). Moreover, our Supreme Court has promulgated rules establishing a statewide plan for the use of interpreters in court proceedings involving non-English speaking and hearing

6

impaired persons.[2] See Supreme Ct. of Ga., Use of Interpreters for Non-English Speaking and Hearing Impaired Persons; see also generally *Weldon v. State*, 328 Ga. App. 163, 163-164 (1) (761 SE2d 566) (2014).

On a similar note, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC § 12132; see 42 USC § 12131 (1) (B) (defining "public entity" to include "any department, agency, . . . or other instrumentality of a State"). And under 28 CFR § 35.160 (b) (2) (part of the federal regulatory scheme enacted pursuant to the ADA, see 42 USC § 12134 (a)), "a public entity shall give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary." In that regard, OCGA § 24-6-652 (b) requires a hearing impaired person in need of an interpreter to notify the court of such need at least ten days before the proceeding in which an interpreter is needed. A hearing impaired person appearing before a Georgia court thus bears some of the burden for requesting preferred services. Moreover, a criminal defendant is not "constitutionally entitled to a perfect,

___

[2] Hardy does not argue that these rules were violated during his trial.

7

word for word interpretation," and any "errors in interpretation must be considered in their full context and with respect to the entirety of the trial to determine how they may have affected a defendant's right to a fair trial." *Cisneros v. State*, 299 Ga. 841, 850 (3) (a) (792 SE2d 326) (2016).

(a) Here, the record shows that Hardy filed a pretrial request for "a qualified interpreter for hearing impaired persons during all proceedings in this case." As a result, three sign-language interpreters were used during Hardy's trial — two acted as "proceedings interpreters" and one acted as a "defense table interpreter." On the first day of trial, they arrived and met with Hardy and his lawyers approximately 30 minutes before the trial started. At that time, they learned that Hardy's sign-language proficiency was somewhat diminished from disuse, as a result of which the interpreters provided him with "straight English interpreting," rather than "American Sign Language," which has its own vocabulary, syntax, and grammar.

During the hearing on Hardy's motion for a new trial, one of the interpreters testified that Hardy also could read lips, as a result of which "the interpreters had everything on their lips as well." The interpreter further testified that, had she known earlier of Hardy's lack of proficiency with signing, she would have recommended

captioning services.[3] Nevertheless, according to the interpreter, it was Hardy's responsibility to speak up if he was having difficulty understanding anything. On that note, immediately before Hardy's trial testimony, the interpreter told the trial court, "[I]t's been made clear to him that if he doesn't understand the court interpreters that he can look to me for clarification," and, "[H]e's been doing that all — all along if needed."

During his trial testimony, Hardy both spoke and signed answers to questions posed to him. In addition, because his speech was not always clear, one of the interpreters clarified words that may have been difficult to understand. Throughout his testimony, Hardy indicated that he initially had difficulty understanding a question asked of him (or a statement preceding a question) 26 times (over the course of 18 transcript pages, out of a total of more than 45 pages of testimony by Hardy). On each such occasion, however, he was able to answer the question (or understand the statement) after clarification was provided by the questioner, interpreter, or both.

---

[3] Captioning services (rather than sign-language interpretation) were provided during the hearing on Hardy's motion for a new trial. Neither party has suggested that Hardy has any difficulty reading, and the record indicates that he has a college degree.

When addressing a challenge to the adequacy of interpretation, an appellate court's inquiry "is focused on whether the alleged inadequacies rendered the defendant's trial fundamentally unfair." *Cisneros*, 299 Ga. at 849-850 (3) (a). "[A] defendant is denied a fair trial if interpretation errors significantly hinder his or her presentation of a defense or alter in a meaningful way the evidence submitted to the jury." Id. at 850 (3) (a). Because Hardy's claim on this issue is akin to a challenge to a trial court's decision regarding the appointment of an interpreter, we normally would review this enumeration of error for abuse of discretion. See *Ramos*, 279 Ga. at 892-893 (1); *Weldon*, 328 Ga. App. at 164 (1); see also *Duran*, 274 Ga. App. at 879 (4) ("The use of interpreters is within the sound discretion of the trial court.") (citation and punctuation omitted).

However, we need not decide whether the trial court abused its discretion, because Hardy waived appellate review of the trial court's handling of his hearing impairment by failing to raise any timely objections to the use of interpreters during his trial. See *Ramos*, 279 Ga. at 893 (2); see also *Cruz v. State*, 305 Ga. App. 805, 808 (2) (700 SE2d 631) (2010) (concluding that the defendants waived appellate review of their claim that they could not understand the Spanish translations provided during their trial, which they raised for the first time in their motions for a new trial); *Duran*,

274 Ga. App. at 879-880 (4) (concluding that the defendant's failure to object to an interpreter's qualifications during a pretrial hearing or at trial waived appellate review of that issue); accord *Weldon*, 328 Ga. App. at 165 (1). We note that the parties have not cited, and research has not revealed, any Georgia appellate decisions applying waiver principles in this context to a claim premised on alleged ADA violations. Nevertheless, we see no reason why a criminal defendant's decision to couch an inadequate-interpretation claim as an alleged ADA violation should have any bearing on the application of waiver principles here. We therefore deem this claim waived, notwithstanding Hardy's reliance on the ADA.

In any event, even if Hardy had not waived this claim, "[h]arm as well as error must affirmatively be shown by the record to obtain reversal." *Duran*, 274 Ga. App. at 879 (4) (citation and punctuation omitted). And Hardy has not identified any record evidence establishing that he could not understand the proceedings sufficiently to meaningfully participate in his own defense.[4] Absent any such prejudice, Hardy's

[4] During the hearing on Hardy's motion for a new trial, when his counsel asked one of his trial interpreters whether she had any concerns as to Hardy's ability to understand what was taking place during his trial, the interpreter responded that such a question would be better directed to Hardy. She added, however, that Hardy "had every opportunity" to speak up "multiple times, every single day" if there was something he did not understand. Hardy's trial counsel testified that — other than instances in which Hardy requested clarification, as reflected in the record (and

11

claim fails on the merits. See id.; see also *Birdow v. State*, 305 Ga. 48, 54 (3) (823 SE2d 736) (2019) (a criminal defendant-appellant bears the burden of showing that hearing assistance during trial was inadequate); *King v. State*, 300 Ga. 180, 182 (2) (794 SE2d 110) (2016) ("The appellant bears the burden of proving error by the appellate record . . . ."); *Puga-Cerantes v. State*, 281 Ga. 78, 80 (5) (635 SE2d 118) (2006) (finding no reversible error arising out of the use of an interpreter where the appellant failed to show how he "was denied the right to participate in a meaningful way in the proceedings").

And while Hardy maintains that prejudice should be presumed based on alleged ADA violations, he cites no authority supporting that claim in the context of a criminal trial,[5] and we decline to apply any such presumption here. Moreover,

---

discussed above) — counsel could not recall any other instances in which Hardy did not understand the proceedings.

[5] In *Ward v. State*, 288 Ga. 641, 644-647 (4) (706 SE2d 430) (2011), cited by Hardy, the Supreme Court of Georgia held that, absent a waiver, prejudice was presumed when the trial court's ex parte dismissal of a juror violated the defendants' rights to be present. Because Hardy has not met his burden of showing that his right to be present in fact was violated, that decision has no bearing here. And in *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 229 (2) (476 SE2d 565) (1996), also cited by Hardy, the Court held that prejudice is presumed when a trial court violates a statute requiring the parties' consent to either consolidation or a joint trial of separate civil actions. That ruling also plainly has no bearing on this case.

12

pretermitting whether (as Hardy briefly claims in a footnote) this claim is subject to plain-error review, his failure to establish prejudice still would produce the same result. See *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018) ("To establish plain error, [an a]ppellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, *likely affected the outcome of the proceeding*, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.") (emphasis supplied).

(b) While we conclude that Hardy has not met his burden of showing reversible error on the specific facts in this case, we nevertheless take this opportunity to remind judges of their obligations to solicit directly from disabled litigants the best way to communicate with them. See 28 CFR § 35.160 (a) (1), (b) (1)-(2); Supreme Ct. of Ga. Comm. on Interpreters, Working with Deaf or Hard of Hearing Persons and Sign Language Interpreters in the Courtroom — a Bench Card for Judges, available at https://georgiacourts.gov/wp-content/uploads/2019/07/DHH-bench-card-10-25-16.pdf (last visited Apr. 13, 2022); see also generally 28 CFR § 35.104 (identifying numerous options for "[a]uxiliary aids and services" that may be used to aid hearing impaired persons).

13

2. Hardy also contends that his trial counsel rendered ineffective assistance in three different ways. We address each in turn.

To establish ineffective assistance of counsel, one must show that counsel rendered deficient performance that prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Seabolt v. Norris*, 298 Ga. 583, 584 (783 SE2d 913) (2016). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U. S. at 687-689 (III) (A). This requires a showing of errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687 (III). Prejudice is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694 (III) (B); *Seabolt*, 298 Ga. at 584-585. An ineffective-assistance claim is a mixed question of law and fact, and we accept the trial court's factual findings unless clearly erroneous but independently apply the law to those facts. *Hulett v. State*, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014); see also *Strickland*, 466 U. S. at 698 (IV). The defendant bears the burden of proof on both prongs of an ineffective-assistance claim — if he fails to establish either prong, a reviewing court need not examine the other. See *Robinson v. State*, 298 Ga. 455, 463 (6) (782 SE2d 657) (2016).

14

(a) Hardy argues that his trial counsel rendered ineffective assistance by failing to follow the mandates of the ADA (and related American Bar Association guidelines on court access for deaf and hard-of-hearing individuals) to ensure that Hardy could communicate effectively at trial. For the reasons stated above in Division 1 (a), however — and pretermitting whether trial counsel rendered deficient performance in this respect — Hardy has not established a reasonable probability that the result of his trial would have been different, had he been offered or provided with different or additional services.[6] See *Strickland*, 466 U. S. at 694 (III) (B); *Seabolt*, 298 Ga. at 584-585; *Hersi v. State*, 257 Ga. App. 63, 64-65 (1) (570 SE2d 365) (2002) (concluding that trial counsel did not render ineffective assistance by failing to obtain an official interpreter for trial, where the defendant did not point to "any specific harm that befell him due to his alleged failure to understand the proceedings, or which part of the proceedings he did not understand"); see also *Sarat-Vasquez v. State*, 350 Ga. App. 322, 326 (2) (829 SE2d 394) (2019) (defendant's failure to show that his due process rights were violated as a result of the absence of an interpreter

---

[6] Given our ruling in this regard, we express no opinion on whether any of the ADA provisions cited by Hardy in support of this enumeration of error — 42 USC §§ 12181 (7) (F) and 12182 (b) (1) (A), and 28 CFR §§ 36.301 (c) and 36.303 (c) (1) — have any applicability here.

15

at trial precluded a finding of prejudice on an ineffective-assistance claim premised on counsel's failure to secure an interpreter); see also generally *Jackson v. State*, 306 Ga. 69, 84 (4) (b) (829 SE2d 142) (2019) (prejudice under the plain-error standard is equivalent to prejudice for an ineffective-assistance claim).

(b) Hardy further maintains that his trial counsel rendered ineffective assistance by failing to file a "particularized" general demurrer to Count 1 of his indictment. We disagree.

> A general demurrer challenges the validity of an indictment by asserting that the substance of the indictment is legally insufficient to charge any crime. In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void, because it fails to allege facts that constitute the charged crime or any other crime, including a lesser included offense of the charged crime.

*Everhart v. State*, 337 Ga. App. 348, 353 (3) (a) (786 SE2d 866) (2016) (citation, punctuation, and emphasis omitted). "An indictment shall be deemed sufficiently technical and correct to withstand a general demurrer if it states the offense in the terms and language of [the] Code or so plainly that the nature of the offense charged may easily be understood by the jury." *Smith v. State*, 340 Ga. App. 457, 458 (797 SE2d 679) (2017) (citation and punctuation omitted); accord OCGA § 17-7-54 (a);

16

see also *Torres v. State*, 361 Ga. App. 149, 153 (2) (863 SE2d 399) (2021) ("[A]n indictment that uses statutory language to charge the defendant with a crime will withstand a demurrer alleging that the indictment is insufficient.").

"The true test of the sufficiency of an indictment to withstand a general demurrer is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective." *Moon v. State*, 335 Ga. App. 642, 648 (3) (782 SE2d 699) (2016) (citation and punctuation omitted). Thus,

> to withstand a general demurrer, an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute. If either of these requisites is met, then the accused cannot admit the allegations of the indictment and yet be not guilty of the crime charged.

*Jackson v. State*, 301 Ga. 137, 141 (1) (800 SE2d 356) (2017).

Here, Count 1 charged Hardy with violating OCGA § 16-12-100.2 (d) (1), which, in relevant part, makes it unlawful

> for any person intentionally or willfully to utilize a[n] . . . Internet service . . . or . . . electronic device[ ] to . . . entice . . . another person

17

believed by such person to be a child[7] . . . to commit any illegal act by, with, or against a child as described in . . . Code Section 16-6-5, relating to the offense of enticing a child for indecent purposes . . . .

Under OCGA § 16-6-5 (a), "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." Count 1 of Hardy's indictment alleged, in relevant part, that he committed

the offense of violation of the Computer or Electronic Pornography and Child Exploitation Prevention Act for that the said accused . . . did intentionally utilize an internet service and electronic device to entice another person believed by the accused to be a child under 16 years of age, for the purpose of committing the act of enticing a child for indecent purposes . . . . (Capitalization omitted.)

According to Hardy, Count 1 was fatally defective because it did not allege any facts establishing the elements of OCGA § 16-6-5 (a), i.e., facts showing that Hardy used an internet service to solicit, entice, or take any child under the age of 16 to a place for the purpose of child molestation or indecent acts. Contrary to Hardy's argument, however, it was not necessary for the State to prove that he in fact

_____

[7] The statute defines "[c]hild" as "any person under the age of 16 years." OCGA § 16-12-100.2 (b) (1).

18

committed the acts described in OCGA § 16-6-5 (a). See *Bolton v. State*, 310 Ga. App. 801, 804-805 (1) (714 SE2d 377) (2011) ("the principal act proscribed by [OCGA § 16-12-100.2 (d) (1)] is *solicitation* and does not require the accomplishment of" the predicate crime alleged in the indictment because "the reference to the underlying . . . offense is relevant to show the element of intent, not to establish the principal act constituting the crime"). Rather, the State needed to prove only that Hardy used an internet service or electronic device to entice another person believed by him to be a child *for the purpose of* committing the acts described in OCGA § 16-6-5 (a). See *Wetzel v. State*, 298 Ga. 20, 29-30 (3) (b) (779 SE2d 263) (2015) (the predicate offense alleged in an indictment charging a violation of OCGA § 16-12-100.2 (d) need not be completed; it suffices if the defendant "merely solicit[s] or entice[s] the child with the aim of engaging in the relevant criminal conduct").

And because it was unnecessary for the State to prove that Hardy committed the acts described in OCGA § 16-6-5 (a), it follows that the State was not required to allege such facts in the indictment. See *Smith*, 340 Ga. App. at 459-463 (1) (an indictment charging an attempt to entice a child for indecent purposes need not allege facts sufficient to establish a completed, substantive offense); id. at 465 (3) (an

19

indictment charging a defendant with violating OCGA § 16-12-100.2 (d) for purposes of violating OCGA § 16-6-5 alleges only "an *attempt*" to violate OCGA § 16-6-5, and not a completed violation of the statute); see also *Davis v. State*, 281 Ga. App. 855, 859 (2) (637 SE2d 431) (2006) (in prosecutions for criminal attempt or conspiracy, it is not necessary for the State to establish all elements of the underlying crimes); cf. *State v. Mondor*, 306 Ga. 338, 344 (1) (830 SE2d 206) (2019) (an indictment alleging that the defendant "did knowingly fail to . . . comply with the requirements of" a cross-referenced statutory provision sufficiently alleged the requisite mens rea because the indictment necessarily incorporated the knowledge requirements set forth in the cross-referenced provision).

Thus, because Hardy could not have admitted the facts alleged and still be innocent of the crime charged in Count 1, the indictment was sufficient to withstand a general demurrer. See *Moon*, 335 Ga. App. at 648-649 (3); see also *Mondor*, 306 Ga. at 341 (1) ("[I]f, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good.") (citation and punctuation omitted). Consequently, Hardy cannot establish either deficient performance or prejudice based on his trial counsel's failure to file a demurrer. See *Subar v. State*, 309 Ga. 805, 809 (2) (848 SE2d 109) (2020) ("[C]ounsel cannot be ineffective for

failing to make a meritless motion.") (citation and punctuation omitted); *Moon*, 335

Ga. App. at 649 (3); see also *Strickland*, 466 U. S. at 687-689 (III) (A), 694 (III) (B);

*Seabolt*, 298 Ga. at 584-585.

(c) Hardy further contends that his trial counsel rendered ineffective assistance

by failing to move for a directed verdict of acquittal based on a fatal variance between

the allegations in the indictment and the proof adduced at trial. We disagree.

"If the indictment sets out the offense as done in a particular way, the proof

must show it so, or there will be a variance." *Fortner v. State*, 350 Ga. App. 226, 230

(1) (828 SE2d 434) (2019) (citation and punctuation omitted). However,

> [n]ot every variance in proof from that alleged in the indictment is fatal.
> The fundamental test is to determine whether (1) the accused was
> definitely informed of the charges against him so as to enable him to
> present his defense and not to be taken by surprise, and (2) the accused
> was adequately protected against another prosecution for the same
> offense. Consequently, the true inquiry is not whether there has been a
> variance in proof, but whether there has been such a variance as to affect
> the substantial rights of the accused. Only in the latter cases is the
> variance considered fatal.

*Moon*, 335 Ga. App. at 647 (2) (citations and punctuation omitted); accord *Wilhite v.*

*State*, 337 Ga. App. 324, 329 (3) (787 SE2d 293) (2016).

21

(i) As stated above, Count 1 of Hardy's indictment alleged, in relevant part, that he "intentionally utilize[d] an internet service and electronic device to entice another person believed by [him] to be a child under 16 years of age, for the purpose of committing the act of enticing a child for indecent purposes . . . ." (Capitalization omitted.)[8] Hardy contends that there was no evidence that he (a) enticed a person he believed to be a child, (b) did so for the purpose of enticing *another* child for indecent purposes, or (c) communicated with a person he believed to be a child.

Hardy's first and third claims ignore the evidence in this case. While he maintains that he communicated only with the detective, who was posing as the child's stepfather, the jury was entitled to find that Hardy was enticing a person he believed to be the stepdaughter through his communications with the detective/stepfather, given his question asking if the stepdaughter had seen his picture and the detective's messages to the effect that the stepdaughter "was really turned up" after seeing the picture and wanted Hardy to bring wine coolers. Hardy's message asking if the stepdaughter "like[d] to give head" and stating that he had "protection" further authorized the jury to find that Hardy believed that he was enticing the stepdaughter through his communications with the detective/stepfather.

---

[8] See Division 2 (b), above, for the relevant statutory text.

22

Hardy's second claim misreads the indictment. Even if inartfully drafted, the indictment did not require a transaction involving two different children (or persons believed to be children). Given its most natural reading, the plain language of the indictment rather required the State to prove only that Hardy enticed another person believed to be a child for the purpose of committing the act of enticing a child for indecent purposes, even if both were the same child.[9]

The allegations in Count 1 adequately (i) informed Hardy of the charges against him to enable him to defend himself and not be taken by surprise and (ii) protected him against another prosecution for the same offense. See *Wilhite*, 337 Ga. App. at 329 (3); *Moon*, 335 Ga. App. at 647 (2). Consequently, Hardy cannot

---

[9] We acknowledge that, by charging OCGA § 16-6-5 (a) (enticing a child for indecent purposes) as the predicate offense underlying a count charging a violation of OCGA § 16-12-100.2 (d) (1) (computer pornography and child exploitation), the State puts itself in the arguably awkward position of bearing the burden of proving that a defendant enticed a person believed to be a child for the purpose of enticing a child for indecent purposes. That the State's burden may be grammatically awkward, however, does not result in the strained interpretation that Hardy proposes. See *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (when considering the meaning of a statute, we must "presume that the General Assembly meant what it said and said what it meant" and afford the statutory text its "plain and ordinary meaning") (citations and punctuation omitted); see also *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (absent clear evidence that the General Assembly intended a contrary meaning, we assign words in a statute their "ordinary, logical, and common meanings") (citation and punctuation omitted).

23

establish either deficient performance or prejudice based on his trial counsel's failure

to move for a directed verdict on this ground. See *Subar*, 309 Ga. at 809 (2); see also

*Strickland*, 466 U. S. at 687-689 (III) (A), 694 (III) (B); *Seabolt*, 298 Ga. at 584-585.

(ii)  Count 2 of Hardy's indictment alleged, in relevant part, that he committed

the offense of attempted child molestation,

> in that the said accused did contact and communicate online with a
> person said accused believed to be under 16 years of age, and did travel
> to a residence located in Camden County, Georgia for the purpose of
> engaging in sexual contact with the person the accused believed to be a
> child, said act constituting a substantial step toward the commission of
> said offense . . . . (Capitalization omitted.)[10]

Hardy again claims that there was no evidence that he communicated with a person

believed to be under the age of 16, given that all of his direct communications were

with the detective, posing as the stepfather. For the reasons stated above in Division

(2) (c) (i), however, the evidence was sufficient for the jury to find that Hardy

---

[10] As relevant here, "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ." OCGA § 16-6-4 (a) (1). And "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1.

believed that he was communicating with the stepdaughter via the messages he exchanged with the stepfather. And as is the case with Count 1, the allegations in Count 2 satisfied the relevant standard, as a result of which Hardy cannot establish either deficient performance or prejudice based on his trial counsel's failure to move for a directed verdict on this ground. See *Subar*, 309 Ga. at 809 (2); *Wilhite*, 337 Ga. App. at 329 (3); *Moon*, 335 Ga. App. at 647 (2); see also *Strickland*, 466 U. S. at 687-689 (III) (A), 694 (III) (B); *Seabolt*, 298 Ga. at 584-585.

3. Finally, we reject Hardy's claim that the cumulative prejudice of errors committed by the trial court and his trial counsel entitle him to a new trial. See *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020). Because we found that trial counsel did not perform deficiently by failing to file a motion for a directed verdict or general demurrer, those issues are irrelevant to the cumulative prejudice analysis. See *Flood v. State*, 311 Ga. 800, 808-809 (2) (d) (860 SE2d 731) (2021) ("[W]hen reviewing a claim of cumulative prejudice, we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors.") (citation and punctuation omitted). And Hardy's remaining claims of error are both predicated on the same proposition — that the failure to provide him with alternate hearing impairment accommodations interfered with his ability to participate meaningfully

25

in his defense. Because Hardy did not meet his burden of establishing prejudice on either such claim, he necessarily has not established cumulative prejudice in that regard, given the substantial overlap between those claims.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur*.